I'm going to speak to the next case, Hinkle v. Joiner, number 517-0229. I don't believe the opposing counsel is here yet. I think he's scheduled for 2 o'clock. I think he's scheduled for 2 o'clock. Well, I have a signing sheet signed by him. Thank you, Your Honor. Thank you, Your Honor. May it please the Court? Let me start over. Yes. Thank you, Your Honor. Thank you, Your Honor. May it please the Court? Thank you, Your Honor.        Thank you, Your Honor. Thank you, Your Honor.   It's my pleasure to be here. Please proceed. Thank you, Your Honor. Thank you, Your Honor. My name is Ryan Wilson, and I represent Richard Joiner on behalf of the Office of the State Appellate Defender. Richard has argued that the circuit court erred by not granting him a Franks hearing in this case. But the facts are kind of interesting. It's not like your normal Franks case. In this case, a confidential informant and a police officer both signed a warrant affidavit trying to establish that it was probable cause for a search of my client's residence. They signed this affidavit. They went to the court. The court asked some questions of both of them. Apparently, we do not know what those questions were. And a warrant was issued. Sometime after that warrant was issued, the confidential informant in this case, whose name is Pete Rohrer, authored two additional affidavits. And in those affidavits, he essentially recanted the statements that he made in the warrant affidavit. He, in the warrant affidavit, said that he had gone to my client's residence and purchased some methamphetamine and saw some other substances there that appeared to be methamphetamine. And it was based on these representations in part that the court issued a warrant in this case. But in the subsequent affidavits, he said, Richard Joyner didn't sell me any methamphetamine. I didn't see any additional methamphetamine in his house. And those statements are crucial in this case, where they are the definitive link between my client and the methamphetamine that the court arguably relied upon when issuing the warrant to search his residence. Now, in this case, the State has made several arguments contesting the two arguments that I've made in my grant. One thing I want to note, the State agrees that generally questions of this nature are reviewed de novo. They ask for this higher kind of clear air standard of review as well because of factual findings that the circuit court allegedly made. We know, though, that de novo is the appropriate standard of review across the board when you're examining whether a court should have granted a preliminary Franks inquiry. And we know that because the Eleanor Supreme Court said that in People v. Chambers. So we're examining this case de novo. This court is in just as good of a position to examine the issues as the circuit court was. We've also supplemented the complaint for the search warrant and the search warrant affidavit in this case. So this court has that material at their disposal as well. The State also argues that it is more difficult to challenge a confidential informant's affirmations than it would be a law enforcement officer. That argument has several problems with it. For one, the Kerro court, the people versus the court in People v. Kerro said that the state didn't have any language limiting whose affirmations you can challenge in a warrant affidavit, whether that be a governmental affiant or a confidential informant that also signs the warrant affidavit. So there's no prohibition against challenging the warrant affidavit here that Pete Rohrer  The case in People v. Born, or the People v. Born case, also noted that the law doesn't distinguish between informants and officers, just like the Kerro case did. In People v. Hoy, which might be the closest case that we have to the case that we have here, a police officer went to a court and said, I believe that there's probable cause for the issuance of a search warrant, and he attached an affidavit that had been signed by a confidential informant, and that was what made up the entirety of the probable cause finding. The court found that you could challenge that affidavit, that just because it was signed by a confidential informant and it was submitted by a confidential informant didn't mean that it was immune from being challenged by the defendant. The state attempts to distinguish Hoy from the case that we have here by saying that in Hoy, all of the probable cause came from the informant's affidavit. And here we have both Rohrer and the officer who signed the affidavit in the case. While we can't necessarily parse out who said what in the warrant affidavit that was submitted to the trial court in the incident case, what we can do is look at the affirmations that we know must have come from Pete Rohrer. And we know that those affirmations are that he went in my client's residence, that he purchased methamphetamine from my client, and that he saw additional methamphetamine in the residence. If you remove all of those factors from the warrant affidavit, you're really left with very little linking my client to the sale of methamphetamine. And that's a real problem for the state's case here. The — and I guess I should also point out the standard that we're looking at here, which is a standard of being between a bare allegation and a preponderance of the evidence. And in a case where the confidential informant on whose testimony in the affidavit this whole warrant was issued, he's now recanted that information. That seems to be the very essence of what the Franks Court was looking at when it wanted to ensure that warrants were being properly executed. After all, this is a search of my client's home. This isn't something the law treats very lightly. There also is a second issue in this case, and that is that in the warrant affidavit, the officer noted that he searched my client before my client allegedly went into — or, I'm sorry, he searched Pete Rohrer before Pete Rohrer allegedly went into my client's residence. Now, arguably, he said that because the judge would be curious about that. The judge wouldn't want to think that a defendant may have had methamphetamine in his pocket, for example, when he walked into my client's residence. That would raise some big questions on where the methamphetamine actually came from. But even though the officer said, well, I searched Pete Rohrer before he went into Richard Joyner's home, the officer conveniently left out the fact that after he searched the confidential form, in this case, Pete Rohrer, Pete Rohrer got into a motorhome and drove the motorhome to my client's residence. When a motion to suppress was filed before the whole Franks proceedings began, the officer, Officer Chad Kaler, said, well, after the motorhome, I went in, I looked around. I didn't see anything out in the open, but I didn't look in the nooks and crannies. Well, there's a huge difference between walking and looking around and not seeing anything out in the open and looking in the nooks and crannies of a place. Did you open up drawers to make sure there's no methamphetamine obvious in the motorhome? Did you look in the refrigerator or under the mattress in this motorhome? How big was this motorhome? We don't know any of these things. And these are the very facts that could be examined during a Franks inquiry in the circuit court. I should also be backing up for one moment. One other thing that the State relies upon is the fact that the officer and the confidential informant went into the judge's chambers prior to the warrant being issued, and the judge placed the confidential informant under oath and questioned him. In denying the motion for the Franks challenge, the court said, I found him to be truthful. He seemed to be truthful, like he was telling the truth when I questioned him. The State essentially takes the position that once that sort of finding is made, you can't challenge Franks proceedings any further, but you have to give almost complete deference to the trial judge. And we know that is the case because, again, the two cases I cited earlier, the Born case and the People v. Hoyle case, it's H-O-Y-E, they were both situations where an informant either gave an affidavit or an informant appeared before the trial of fact and actually gave statements to the judge. Obviously, there were Franks inquiries in those cases. It is a very dangerous thing, and Franks court acknowledges this, it's a very dangerous thing to say that once a court makes a determination on fairly limited evidence, in this case, an affidavit and whatever questions he asked of the officer and the confidential informant, that you cannot test the case any further than that, even in light of the confidential informant offering additional affidavits that recant the statements that he made that were so crucial to the issuance of the search warrant in the first place. That is what the Franks court was so concerned about law enforcement overreach and knowingly using false statements. They should be able to turn a blind eye when there's a question about the veracity of an informant. Now, that question of the veracity may not have been in the forefront of the court's mind when the informant appeared before the court initially with the officer, but certainly there has to be some point in this case where the informant offered these subsequent affidavits. So for those reasons, we'd ask that this court remain the case for a Franks hearing. Thank you. I have an opportunity for rebuttal. Thank you. Counsel for Appley. I understand that we have 711. That is correct, Your Honor. Let me wet my whistle real quick. May it please the court. Counsel. My name is Douglas Malcolm. I'm a 711 licensed law student from the University of Illinois, representing the state on behalf of the state appellate prosecutor. In order to trigger a Franks hearing, defendant must demonstrate that the search warrant application either included a false statement or a material omission, and that the appeant officer included either this false statement or made this material omission either knowingly, intentionally, or with reckless disregard for the truth. Defendant has failed to check either one of these requisite boxes in order to trigger a Franks hearing, and thus this court should affirm the lower court's denial of defendant's motion for Franks hearing. Looking first at that first box, the false statement, as defense counsel has already demonstrated, confidential informant submitted affidavits directly countering the confidential informants in camera under oath statements made when both the appeant officer and the informant appeared before the magistrate judge. Now, defense would have you believe that these subsequent affidavits are truthful and the initial statements are not. However, this does fly directly in the face of what the trial judge ultimately determined, which was that the in-camera statements were factually truthful. In fact, twice over the course of the proceedings, the trial judge said something to the effect of, John Doe appeared before me, placed him under oath, asked him questions in detail, and set forth regarding the affidavit for search warrant. I see no reason for a Franks hearing. Now, it is not the state's stance that once a trial judge makes a factual determination regarding truthfulness that no Franks challenge can be raised, as the defense counsel argues, only that the trial judge is in a position deserving of deference. The trial judge had the opportunity to interact with the confidential informant. The trial judge had the opportunity to oversee the entire proceedings. And while the confidential informant answered questions in camera at that time, the subsequent affidavits and the other individuals who also provided affidavits were not subject to cross-examination. Counsel, let me ask you, what about, I think opposing counsel suggests that Hoyne-Bourne supports the claim that the informant's recantation of the by was sufficient in of itself to trigger a Franks hearing. How would you respond to that? Yes, Your Honor. Specifically, in every case where a confidential informant, the falsehood that is attributed to the confidential informant is sufficient to trigger a Franks hearing, the probable cause determination relies on the confidential informant's contributions to the search warrant affidavit. Specifically in Hoyne, without the confidential informant's contributions, there was no probable cause. However, that is not the case here. We know that from the search warrant affidavit that the affidavit officer received multiple tips, calls, suggesting that there was drug activity taking place at the defendant's residence. And instead of just taking those tips at their word, the affidavit officer corroborated those tips by executing the controlled by, where he supervised the confidential informant as the confidential informant purchased meth from the defendant. Now, in the search warrant affidavit, there is a statement attributed to the confidential informant where the confidential informant told the affidavit officer that he purchased meth from the defendant multiple times over the course of the previous six months. If you remove that from the search warrant complaint, there is still probable cause there. This case is actually best analogous to People v. Creel, where the 3rd District had both the confidential informant and the affidavit officer appear in camera, and the defendant, in People v. Creel, made the same ploy argument that the defense makes today. However, the Creel court determined that because there was still probable cause in the search warrant complaint without the contributions of the confidential informant, then there was no Frank's hearing that was warranted. The same is true here. Probable cause existed in the search warrant complaint absent the confidential informant's contributions, and thus this court should affirm the lower court's judgment. Now, in the reply brief, the defendants argue that this court should not rely on Creel because the state's argument in that case relied on Grastiata, which is no longer good law in the state of Illinois. However, the 3rd District, when coming to its conclusion, did not rely on the state's argument, instead saying, we need not reach this issue as we have already found the defendant failed to make any showing that the affidavit officer intentionally or recklessly included a falsehood in the warrant complaint. Creel is still good law in the state of Illinois, and if this court does not determine that the defense has failed to include a false statement or identify a false statement in the search warrant complaint, then this court should rely on people v. Creel in affirming the lower court's judgment. Now, the defense also argues that because the search warrant complaint made no mention of the confidential informant's vehicle, specifically a Class C motorhome, that that was a material omission, and thus this checks off that falsehood box. However, a material omission is one where if the information that was omitted, if then included back in the search warrant application, does away with the probable cause determination. However, if that information was included in the search warrant application, that would not defeat the probable cause because we know that the affidavit officer had received multiple tips regarding the defendant's residence and drug activity, and the officer corroborated those tips. The fact that it was a Class C motorhome or a two-door sedan does not undo that determination. We know that the officer did look around. There is no specific standard that the officer must conduct a search that goes through every single nook and cranny. Furthermore, a Class C motorhome has a separate cab from the rest of the home itself, such that in order to access the rest of the cab, you must leave the van and enter the rest of the home. There is nowhere in the record indicating that the confidential informant did this, which would indicate the defendant's argument that it's possible that there was more contraband in the home. Because the information that was omitted was not material, because it would not defeat probable cause if it was included, the material omission argument does not trigger a Frank's hearing. Seeing no further questions, we ask that this Court affirm the lower court's denial of the defendant's motion for a Frank's hearing. Thank you. Rebuttal. Thank you, Your Honor. Thank you, Your Honor. A couple things. Regarding the – and counsel did a much better job of pronouncing it than I will – the Graciata case. Creel did rely on Graciata on, it looks like, page 944 in the parenthetical as part of its holding. So while the Court did look at another section of Graciata, and that is the section that counsel refers to, this part of this parenthetical was something that Creel relied upon. Further, Creel's holding is kind of an outlier, because both in Borne and People v. Caro, the courts have explicitly stated that Frank's – Frank's simply contains no language precluding an attack on the warrant affidavit where a nongovernmental informant testifies before the issuing judge. At no point does the Court require showing that the challenger client is a governmental employee. It extends the statements of unsworn – it extends the statements of unsworn governmental, nongovernmental informants. This, what I would be afraid of, is a blank check to not offer any oversight when a confidential informant is being used. Whether it's a confidential informant or if it's a governmental informant, if they are contributing evidence to a probable cause determination to search someone's home, and then we can't have information later, it doesn't matter if that person appeared before the Court. As I said during my initial argument, there are cases in Napa-Dakau, even if they appear before a court, their testimony, their sworn testimony before the court can be impeached. Such needs to happen here as well. There are two things that the defendant said that I also want to comment on. The first is, he commented on what a Class C motorhome is. There's nothing in the record regarding Class C motorhomes, whether they accept a cab or not. I looked in the record before I came to argument today because I was curious about that very thing. There's nothing in there. I don't know if that was evidence that was researched outside of the record or not. But none of that sort of argument should be relied upon by this Court. But additionally, there's a big question here that I don't want to lose sight of. And that is, the State has argued, if you excise the things that Rohr said in the original affidavit, that there's still probable cause for the search of my client's home. The problem with that is, all the other questions that still exist, in the original affidavit, Rohr said, Richard Joyner gave me the methamphetamine, and I saw other substances that looked like methamphetamine in his home. If you take all that out, we're left with the question of, who gave the methamphetamine to Rohr? We don't know that. Who else was in Richard Joyner's home at the time of this alleged transaction? We don't know that. Was there somebody else that gave it to Rohr? We don't know. Did they go to the neighbor's house while Rohr was over at the defendant's and get the methamphetamine there? We don't know that either. These are the very questions that a Frank's inquiry can answer and the very questions that we've been denied up until this point. Again, this is a search of my client's home. This isn't something to be taken lightly. And where the Circuit Court has presented with strong evidence that the confidential informant has recanted the various statements that the Circuit Court relied upon to issue the search warrant, a Frank's inquiry is warranted. So I would ask this Court to remand this case for that inquiry. Thank you, Your Honors. Thank you, Counsel. The Court will take this matter under advisement, and the case committee will make a decision in due course.